**Robert E. SALLIE, Plaintiff–Appellant,**

v.

**Jeffrey R. THIEL, Defendant–Appellee.**

**No. 01–1116.**

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 20, 2001 *.

Decided Dec. 4, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before COFFEY, KANNE, DIANE P. WOOD, Circuit Judges.

ORDER

Robert Sallie, a Wisconsin prison inmate, filed suit under 42 U.S.C. § 1983, alleging that deputy sheriff Jeffrey Thiel violated his Eighth Amendment rights when Thiel forced a "feed slot door" closed and severed the tip of Sallie's middle finger. The district court granted the defendant's motion for summary judgment, finding that the evidence established that Thiel had injured Sallie accidentally. Sallie now appeals, and we reverse and remand the case for further proceedings.

In June 1995 Sallie was confined to the administrative segregation unit of the Dane County Jail. Cells in the segregation unit are equipped with "feed slots" so that prison personnel can deliver meal trays to inmates without opening their cell doors. The feed slot door to Sallie's cell was open when Thiel began his shift on June 10. Prison logs show that a different deputy had allowed Sallie to keep the door open on June 6, but the log for June 10 contains no such notation. Normally, feed slot doors are closed at all times except during meals. It was almost time for the evening meal when Thiel arrived at work, so Thiel waited until after dinner had been served and Sallie finished with his meal tray before attempting to close the feed slot door. Sallie told Thiel that other deputies had allowed him to leave the door open because his cell was hot. Sallie hung his arm out of the door to prevent Thiel from closing it. Thiel asked Sallie to remove his arm so that the feed slot door could be shut, but Sallie refused.

With the assistance of two other deputies, Thiel tried to subdue Sallie by applying two bursts of pepper spray. The pepper spray hit Sallie's lower body, however, and was ineffective. One of the other deputies attempted to persuade Sallie to let Thiel close the door. Sallie began to withdraw his arm, and Thiel pushed on the feed slot door. Initially, Thiel felt "some resistance when the door was most of the way closed." Thiel "repositioned [him]self, pushed again, and was able to successfully close the door." The tip of Sallie's middle finger was caught in the feed slot hinges and was amputated. Sallie was transported to the emergency room for medical treatment, but doctors were unable to reattach his fingertip. Hospital personnel filed down a small amount of bone that protruded from Sallie's wound, dressed his finger, and treated him with antibiotics and pain medication.

Sallie filed suit against Thiel in June 2000, claiming that Thiel used excessive force in violation of the Eighth Amendment when he severed Sallie's fingertip in the feed slot door. Sallie alleged that Thiel knew his finger was caught in the door and injured him intentionally.

Thiel moved for summary judgment, and Sallie filed a brief in opposition, attaching an affidavit that stated that Sallie had "yelled out to defendant Thiel making him aware that his finger is [sic] caught in the feed slot trap door" before Thiel repositioned himself and pushed the door closed. In his Response to Plaintiff's First Set of Interrogatories, Thiel stated that, while he was trying to close the feed slot door, he heard Sallie yell out that his finger was caught. In the affidavit accompanying his motion for summary judgment, however, Thiel asserted that he did not hear Sallie cry out until the door was already closed and he was walking away from the cell. The district court accepted as undisputed fact that Sallie did not yell to Thiel until

after the door was closed completely. The court consequently concluded that Thiel had severed Sallie's finger accidentally and granted Thiel's motion for summary judgment.

We review a district court's grant of summary judgment de novo, drawing all inferences in the light most favorable to the party opposing summary judgment. *Frost v. Midwest Autohaus*, 241 F.3d 862, 867–68 (7th Cir.2001). Summary judgment is appropriate only if the record reflects no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

It is unclear from the record whether Sallie was a pretrial detainee at the time of his injury. If Sallie was a pretrial detainee, he was technically protected under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment. *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir.1996). In this case, however, Sallie's status as a pretrial detainee would not change the outcome of our analysis because the Fourteenth Amendment standard governing excessive force claims in the prison security context is the same as the Eighth Amendment standard. *Id.* at 876–77.

■ The unnecessary and wanton infliction of pain on prisoners violates the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Ordinarily, the use of de minimis physical force will not support an Eighth Amendment excessive force claim. If the force is more than de minimis, then a court must inquire "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7, 112 S.Ct. 995. Several factors are relevant to this inquiry including "the need for an application of force, the relationship between that need and the force applied,

the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Id.* A prison official who inflicts force maliciously and sadistically to cause an inmate harm violates the Eighth Amendment. *Id.* at 9, 112 S.Ct. 995.

While a "significant injury" is not a prerequisite to an Eighth Amendment claim, the severity of an injury is relevant to a determination whether the force used in a particular instance is more than de minimis. *Outlaw v. Newkirk,* 259 F.3d 833, 837–38 (7th Cir.2001). A severe or significant injury resulting from an intentional use of force provides sufficient support for an Eighth Amendment excessive force claim. *See Hudson,* 503 U.S. at 10, 112 S.Ct. 995 (bruises, swelling, loosened teeth, and a cracked dental plate are not de minimis); *Gomez v. Chandler,* 163 F.3d 921, 924–25 (5th Cir.1999) (injuries were more than de minimis when plaintiff "allegedly suffered cuts, scrapes, and contusions to the face, head, and body"); *Harris v. Chapman,* 97 F.3d 499, 505–06 (11th Cir.1996) (plaintiff who had been kicked, beaten, choked with a towel, slapped in the face, and harassed with racial epithets had suffered more than de minimis injury); *Thomas v. Stalter,* 20 F.3d 298, 302 (7th Cir.1994) (plaintiff who required the extraction of four teeth after being punched in the mouth did not suffer merely de minimis injury). Sallie suffered a partial amputation of his finger that necessitated a trip to the emergency room and weeks of follow-up treatment. Sallie's injury was severe, and therefore Thiel's use of force was not de minimis.

The relevant inquiry thus becomes whether Thiel used such force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7, 112 S.Ct. 995. No doubt valid security reasons exist for keeping the feed slot doors in the segregation unit of a prison closed whenever possible. But prison logs show that, a few days before this incident, another deputy had allowed Sallie to leave his feed slot door open, and Thiel himself did not attempt to close the door immediately upon starting his shift. Apparently, there was no urgent need to close the door that would justify the amputation of Sallie's fingertip.

Thiel's awareness and intent when he shut the feed slot door is a material question of fact. If Thiel closed the feed slot door knowing that Sallie's finger was caught in the hinges and intending to injure him, then Thiel "maliciously and sadistically" caused Sallie harm. Because of the difficulty of proving a subjective state of mind, cases involving motivation and intent are often inappropriate for summary judgment. *See Alexander v. Wis. Dep't of Health and Family Servs.,* 263 F.3d 673, 681 (7th Cir.2001). The record offers conflicting evidence concerning Thiel's awareness and intent. The district court credited Thiel's account of events over Sallie's and concluded that Thiel had severed Sallie's finger accidentally. At the summary judgment stage, however, the record should have been reviewed in the light most favorable to Sallie, and all inferences should have been drawn in his favor. *Frost,* 241 F.3d at 867–68. Sallie claimed that he cried out before Thiel completely shut the door and severed his finger. In addition, in his response to interrogatories, Thiel stated that he heard Sallie cry out while he was closing the door. Sallie also filed two affidavits from fellow prisoners who stated that Sallie had cried out while Thiel was closing the door. One could therefore infer that Thiel knew that Sallie's finger was caught in the door and that he intentionally and maliciously harmed Sallie. Summary judgment was therefore

inappropriate. The judgment of the district court is REVERSED and the case REMANDED for proceedings consistent with this order.[1]

1. After filing his brief on appeal, Sallie filed a "Motion for Relief," alleging that he did not have a reasonable opportunity to contradict the material facts asserted by Thiel in his affidavit. *Lewis v. Faulkner,* 689 F.2d 100, 101 (7th Cir.1982). Appellate review is restricted to those issues Sallie raised in his opening brief. *Parrillo v. Commercial Union Insurance Co.,* 85 F.3d 1245, 1249–50 (7th Cir.1996). Sallie's motion is DENIED.

